IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JEREMY WILLIAM AMERO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:19-CV-195-Z-BR |
| | § | |
| DIRECTOR, TDCJ-CID | § | |
| | § | |
| Respondent. | § | |

**<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY</u>**

Jeremy William Amero, a Texas prisoner, petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Amero is not entitled to federal habeas corpus relief or a Certificate of Appealability from this Court.

## I.        <u>BACKGROUND</u>

### A. The Offenses

There is no genuine dispute as to the operative facts of Amero's offenses. On the evening of October 26, 2015, Amero, driving his white Mustang, closely pursued another vehicle driven by Tammy Morgan, a friend of Amero's girlfriend Rory Schepisi, for more than three miles across Amarillo, Randall County, Texas. Amero made numerous lane changes and attempted to stay directly behind or beside Morgan's vehicle. Morgan pulled over at one point when Amero yelled at her and she saw his shotgun. She handed Amero her phone charger when he demanded it but refused to tell him where Schepisi was. A third vehicle, driven by Evan Gray, attempted to intercede and get between Amero's Mustang and Morgan's SUV. But Amero managed to maintain contact with Morgan's SUV until police made a traffic stop of Amero's vehicle after it crossed

into Potter County. During the vehicular pursuit, Amero pointed a loaded shotgun at both Gray and Morgan. When police stopped Amero's vehicle, they found his loaded pump-action shotgun on the front seat of his vehicle. Both Gray and Morgan testified without contradiction to the foregoing facts at the punishment phase of Amero's trial in January 2017. (ECF 13-6 at 10–18, 46–68).

### B. Indictment

On November 15, 2015, a Randall County grand jury indicted Amero on two counts of aggravated assault, *i.e.*, intentionally and knowingly threatening both Gray and Morgan with imminent bodily injury by using a deadly weapon, to wit, a firearm, in connection with the events described above.[1]

### C. Guilty Plea

On October 28, 2016, Amero entered guilty pleas to both of the counts against him. In the Order approving admonitions issued that date by the trial court and executed multiple times by both Amero and his trial counsel (attorney R. Walton Weaver), Amero represented that (1) he understood the warnings and information set forth in that document; (2) he was aware of the consequences of his pleas as set forth in his plea memorandum; (3) he was mentally competent to enter his pleas and was sane at the time of his offenses; (4) no one had threatened him in any way or placed him under any kind of fear in order to cause him to enter his pleas; (5) his pleas were freely, knowingly, and voluntarily entered; and (6) no one had promised him anything in order to cause him to enter a plea to the charges against him.[2]

---

[1] Copies of Amero's two-count indictment appear in multiple places among the state court records in his case. (*See* ECF 12 at Exhibit B; ECF 13-4 at 5–6).

[2] (ECF 12 at Exhibit C; ECF 13-4 at 85–90).

### D. Punishment Hearing

On January 13, 2017, the state trial court heard testimony from Amero's victims Gray and Morgan, as well as several law enforcement officers involved in Amero's arrest on October 26, 2015. (ECF 13-6 at 10–68). The prosecution also presented multiple witnesses who testified about a separate incident that took place in June 2016 in which Amero pointed a gun at Amanda Renee Arias, then Amero pointed the gun at his own head, and the ensuing standoff with law enforcement resulted in SWAT teams from multiple law enforcement agencies responding to the situation. (*Id.* at 73–119).

On January 24, 2017, Amero's trial counsel presented testimony from (1) a Potter County Sheriff's Department warrant officer regarding Amero's June 2016 extradition from Florida and (2) Amero's family therapist (Dr. Wilbert Newton) regarding Amero's history of substance abuse and anger management counseling. (ECF 13-7 at 6–32).

### E. Sentencing

On February 17, 2017, the state trial court sentenced Amero to serve concurrent ten-year terms of imprisonment on each of the two counts against him. (ECF 13-8 at 4–12).[3]

### F. Direct Appeal

Amero appealed his convictions and sentence. Attorney Seth Kretzer filed Amero's appellate brief on August 18, 2017, raising two points of error, *i.e.*, arguments that the state trial court erred in allowing the prosecution to present testimony about the June 2016 police standoff because the prosecution had failed to give proper notice to the defense of its intention to present evidence of that incident and also because the prosecution had failed to prove beyond a reasonable

---

[3] Copies of Amero's Judgment appears among the state court records herein. (*See* ECF 12 at Exhibit A; ECF 13-19).

3

doubt that Amero committed the acts alleged in June 2016.[4] In an unpublished opinion issued January 5, 2018, the Texas Seventh Court of Appeals affirmed Amero's convictions and sentence. *Amero v. State*, 2018 WL 343500 (Tex. App.—Amarillo Jan. 5, 2018).[5] On February 8, 2018, the Texas Court of Criminal Appeals refused Amero's petition for discretionary review.[6]

### G. State Habeas Corpus Proceeding

On July 23, 2019, Amero filed a pro se application for state habeas corpus relief in which he argued that (1) the state trial erred when it failed *sua sponte* to hold a hearing to determine Amero's competency before accepting his guilty plea; and (2) Amero's trial counsel rendered ineffective assistance by (a) failing to challenge venue; (b) failing to advise Amero regarding the availability of an insanity defense; (c) failing to contact Amero's physician to inquire regarding the medications Amero was taking and their impact on Amero's sanity at the time of his offense and competence to enter a guilty plea; (d) erroneously advising Amero to plead guilty instead of not guilty by reason if insanity; (e) failing to request a competency hearing; (f) failing to present Amero's medical records from a June 2015 incident in which Amero was treated for a suicide attempt; and (g) failing to adequately object to the prosecution's introduction of extraneous bad acts.[7] On September 25, 2019, the Texas Court of Criminal Appeals denied Amero's state habeas corpus application without written order. *Ex parte Amero*, WR-90,295-01 (Tex. Crim. App. Sept. 25, 2019).

---

[4] A copy of Amero's appellate brief appears among the state court records in this case. (*See* ECF 13-16).

[5] A copy of the Amarillo Court of Appeals' opinion affirming Amero's conviction and sentence appears at ECF 13-18. Another copy appears as Exhibit K attached to Amero's memorandum in support of his federal habeas corpus petition. (ECF 5-1 at 104–09).

[6] A copy of the Texas Court of Criminal Appeals' cover sheet reflecting refusal of Amero's PDR appears at ECF 13-23.

[7] A copy of Amero's pro se state habeas corpus application appears at ECF 13-26.

### H. Proceedings in this Court

On October 15, 2019, Amero filed a pro se petition for federal habeas corpus relief in which he argued that (1) the state trial court erred in failing to conduct a competency hearing before accepting Amero's guilty plea because Amero suffers from bi-polar disorder; and (2) his trial counsel rendered ineffective assistance by failing to (a) investigate the charges against Amero and challenge venue in Randall County; (b) investigate the case against Amero and present an insanity defense based upon Amero's bipolar disorder and the unspecified medications Amero was taking on the date of his offense; (c) discuss the possibility of presenting an insanity defense with Amero; and (d) know the law applicable to an insanity defense and informing Amero that bi-polar disorder is not insanity. (ECF 3).

On October 28, 2019, Amero filed a memorandum of law in support of his federal habeas corpus petition to which he attached numerous documents, including excerpts from the trial testimony of Amero's family counselor, Dr. Newton, and Amero's own affidavit. (ECF 5; ECF 5-1). On February 12, 2020, Respondent filed his answer. (ECF 12). On March 3, 2020, Amero filed his traverse. (ECF 14).

## II.    STANDARD OF REVIEW

Because Amero filed this federal habeas corpus action after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), this Court's review of his claims for federal habeas corpus relief is governed by AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Under the AEDPA standard of review, this Court cannot grant Amero federal habeas corpus relief in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. § 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"). A state court's failure to cite Supreme Court authority does not, per se, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of . . . clearly

6

established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins*, 539 U.S. at 520-21. The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner"). "Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter,* 562 U.S. 86, 101(2011)).

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

AEDPA also significantly restricts the scope of federal habeas review of state court fact findings. Section 2254(d)(2) of Title 28, United States Code, provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication of the claim resulted in a decision based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceeding. *Wood v. Allen*, 558 U.S. 290, 301(2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Williams v. Taylor*, 529 U.S. at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."). Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), on habeas review, this does not suffice to supersede the trial court's factual determination. *Wood*, 558 U.S. at 301; *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

In addition, § 2254(e)(1) provides that a federal habeas petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro*, 550 U.S. at 473-74 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice*, 546 U.S. 333, 338-39 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. § 2254(e)(1). It remains unclear at this juncture whether § 2254(e)(1) applies in every case presenting a challenge to a state court's factual findings under § 2254(d)(2). *See Wood*, 558 U.S. at 300-01 (choosing not to resolve the issue of § 2254(e)(1)'s possible application to all challenges to a state court's factual findings); *Rice*, 546 U.S. at 339 (likewise refusing to resolve the Circuit split regarding the application of § 2254(e)(1)).

The deference to which state-court factual findings are entitled under AEDPA does not

imply an abandonment or abdication of federal judicial review. *See Miller-El*, 545 U.S. at 240 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief.").

Without a showing that there is an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the rights of a petitioner, this Court is statutorily precluded from granting federal habeas corpus relief on any claim that has not been fairly presented to the state courts. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (the exhaustion requirement is designed to avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation); 28 U.S.C. § 2254(b)(1). Nonetheless, this Court is authorized to deny federal habeas relief on the merits notwithstanding a petitioner's failure to exhaust available state court remedies. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (a federal habeas court abuses its discretion if it grants a petitioner a stay when his unexhausted claims are plainly meritless); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). In those instances in which the state courts failed to adjudicate a claim on the merits that a petitioner presents to this Court (such as claims (1) the state courts summarily dismissed under the Texas writ-abuse statute or other Texas rules of procedural default or (2) which a petitioner failed to fairly present to the state courts), this Court's review of the un-adjudicated claim is de novo. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) (de novo review of the allegedly deficient performance of petitioner's trial counsel was necessary because the state courts had failed to address this prong of *Strickland* analysis); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (de novo

review of the prejudice prong of *Strickland* was required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins*, 539 U.S. at 534 (same).

### III.    MERITS

#### A. Competence to Enter a Guilty Plea

##### 1. The Claim

Amero argues the state trial court erred when it failed to hold a competency hearing *sua sponte* before accepting his guilty pleas.

##### 2. State Court Disposition

Amero presented essentially the same claim as his first ground for state habeas corpus relief in his state habeas corpus application. The Texas Court of Criminal Appeals denied this claim on the merits when it denied Amero's state habeas corpus application.

##### 3. Clearly Established Federal Law

A criminal defendant may not waive his right to counsel or plead guilty unless he does so competently and intelligently. *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)). The standard for competence to stand trial, which is the same standard as that for entering a guilty plea, is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396 (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960), and *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). A criminal defendant is entitled to a hearing on the issue of his competence to stand trial when the evidence before the court raises a bona fide doubt as to the defendant's competence to stand trial. *Robinson v. Pate*, 383 U.S. 375, 385-86 (1966).

10

### 4. AEDPA Analysis

A trial court must *sua sponte* hold a competency hearing if there is reasonable cause to believe the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. *United States v. Mitchell*, 709 F.3d 436, 440 (5th Cir. 2013); *United States v. Flores-Martinez*, 677 F.3d 699, 706 (5th Cir. 2012). There is no specific threshold or quantum of evidence that requires the trial court to order a competency hearing; the court considers three factors: (1) the existence of a history of irrational behavior; (2) the defendant's demeanor at trial; and (3) prior medical opinion on competency. *Thomas v. Lumpkin*, 995 F.3d 432, 451 (5th Cir. 2021); *Mitchell*, 709 F.3d at 440. Significantly, the presence or absence of mental illness or brain disorder is not dispositive as to competency. *Mitchell*, 709 F.3d at 440 (citing *Mata v. Johnson*, 210 F.3d 324, 329 n.2 (5th Cir. 2000)). On collateral review, such as federal habeas review, the central question is whether, based on what was known to the state trial court, the failure to make further inquiry into the defendant's competence to stand trial denied the defendant a fair trial. *Thomas*, 995 F.3d at 451 (citing *Drope*, 420 U.S. at 174-75).

In his sworn written declaration executed October 28, 2016, Amero declared that he understood the warnings and information contained in his plea memorandum and was aware of the consequences of his plea. He also stated that he was mentally competent then and was sane at the time of his offense. Amero's attorney signed a similar declaration in the same document. Amero alleged no specific facts in his state habeas corpus application showing that his demeanor or verbal statements on or before October 28, 2016 or in any proceeding before the state trial court on any other date suggested Amero was not fully conversant with the charges against him or the potential

consequences of his conviction on either of the counts against him. Nor does Amero allege any specific facts showing that he or his trial counsel ever informed the state trial court that Amero had a history of irrational, as opposed to criminal, behavior.

Instead, in an affidavit dated August 23, 2019 that Amero apparently attached to his state habeas corpus application, but which Amero clearly does *not* allege he ever presented to the state trial court prior to entry of his guilty plea or his sentencing, Amero stated that (1) at his very first meeting with his trial counsel, attorney Weaver, Amero informed Weaver that he did not remember the events of the night on which his offenses took place; (2) during that same meeting Rory Schepisi, whom Amero identified as his "wife," informed Weaver that Amero was out of his mind on the night in question and had no idea who she was and she knew Amero was not in his right mind that evening; (3) he entered his guilty plea in reliance on Weaver's representations that "the worst" Amero would receive was "shock probation"; (4) he did not feel competent to enter his guilty plea and telephoned his wife, who had a harsh verbal exchange with attorney Weaver; (5) during his first meeting with attorney Weaver, Amero also informed Weaver that he had been diagnosed in January 2016 with bipolar disorder but attorney Weaver informed Amero that a diagnosis of bipolar disorder was not the equivalent of a diagnosis of insanity; and (6) if he had known he might get prison time, he would not have pleaded guilty but, instead, would have insisted on going forward to trial.[8]

---

[8] Multiple copies of Amero's affidavit of August 23, 2019 appear among the state court records in this case. One such copy appears at ECF 13-26 at 245–48.

Amero did not furnish the state habeas court with an affidavit from Rory Schepisi and does not furnish this Court with an affidavit from Ms. Schepisi. While the state court records from Amero's state habeas corpus proceeding do include what purports to be a one-page typewritten letter from Ms. Schepisi, that letter is not signed by her, much less notarized or otherwise authenticated, and, therefore, does not constitute admissible evidence.

Likewise, this Court has scoured the voluminous state court records from Amero's trial, direct appeal, and state habeas corpus proceedings and has been unable to locate any medical records showing that Dr. David L. Tyson

In another affidavit dated October 23, 2019 that Amero did *not* attach to his state habeas corpus application, and which Amero clearly does *not* allege he ever presented to the state trial court prior to entry of his guilty plea or his sentencing, Amero stated that (1) prior to trial, he advised attorney Weaver that he had been diagnosed with bipolar disorder, could not remember the incident on the night in question, and could not assist Weaver in investigating the facts of the case; (2) he instructed Weaver to contact the doctor who had diagnosed Amero with bipolar disorder but Weaver responded that bipolar disorder was not a serious mental issue; and (3) he believed the testimony of Evan Gray established that the offense occurred in Potter County, not Randall County.[9] As explained above, the Texas Court of Criminal Appeals denied Amero's state habeas corpus application on September 25, 2019.

Attorney Weaver furnished the state habeas court with an affidavit dated August 5, 2019, in which attorney Weaver states, in pertinent part, that Amero (1) was able to review the discovery and discuss and understand the pertinent issues arising from the factual allegations and legal theories of the defense; (2) was able to assist the defense by discussing the events occurring the night of his arrest; (3) assisted in gathering past medical records; and (4) voluntarily attended

---

or any other medical professional has ever diagnosed Amero with bipolar disorder. On the contrary, the vast majority of the voluminous medical records filed in connection with Amero's trial and state habeas corpus proceedings relate to Amero's hospitalization on June 9-12, 2015 following Amero's ingestion of 15 1-mg tablets of Xanez over a four-hour period while Amero's blood alcohol level was measured at 0.27. (*See* ECF 13-9; ECF 13-10; ECF 13-11; ECF 13-12; ECF 13-14; and ECF 13-15). Those records show Amero was treated in June 2015 for depression and suicidal ideation, but he refused to participate in group therapy during his hospitalization and made poor progress toward achieving his goals during that period. (*Id.).* The only pages of those records addressing Amero's treatment by Dr. David L. Tyson state that Dr. Tyson treated Amero on January 27, 2016 for seizures and on April 14, 2016 for sinusitis and recurrent anxiety. (*See* ECF 13-26 at 55–58). Five pages of the same medical records address an apparent attempt by Amero to voluntarily commit himself for mental health treatment on or about December 12, 2016; however, Amero did not sign any of those documents. (*See* ECF 12-13 at 36–40; ECF 13-26 at 667–71).

[9] (ECF 5-1 at 101–02).

mental health treatment counseling.[10]

In conclusion, Amero presented the state habeas court with no evidence showing that he had a history of irrational, as opposed to criminal, behavior. Amero identified no behavior or statements by himself during any legal proceeding in the state trial court that might have alerted the state trial judge to the need for a hearing on Amero's competency. Amero furnished the state habeas court with no evidence showing there were any medical records available at the time of his guilty plea proceeding showing that Amero had ever been diagnosed with any mental disease or defect or was then otherwise suffering from any mental condition that might detrimentally impact Amero's ability to consult intelligently with his trial counsel or understand the nature of the legal proceedings against him. Amero furnished the state habeas court with no affidavits or testimony from any medical or mental health professional suggesting there was any problem with Amero's competency as of October 28, 2016. The Texas Court of Criminal Appeals' rejection on the merits of Amero's first ground for state habeas corpus relief included an implicit factual determined that Amero was competent to enter his guilty plea. The state habeas court implicitly found attorney Weaver's affidavit more credible than Amero's controverting affidavit on the issue of Amero's competency to enter his guilty plea.

Amero's attempt in his state habeas affidavit to controvert his own sworn assertions made on October 28, 2016 (when Amero made sworn written assertions that he was competent) could reasonably have been construed by the state habeas court as ineffectual. *See Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005) (recanting affidavits are viewed with extreme suspicion); *Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996) (recanting affidavits and testimony are disfavored

---

[10] Multiple copies of attorney Weaver's affidavit appear among the state court records from Amero's state habeas corpus proceeding. One such copy appears at ECF 13-26 at 128–31. Another copy appears at ECF 12-6 at 2–5.

and recanting affidavits must be compared to the trial record to determine if they are worthy of belief); *May v. Collins*, 955 F.2d 299, 314 (5th Cir. 1992) (the trial judge is in the optimal position to assess the credibility of affidavits). Furthermore, even before the advent of the AEDPA, such factual findings as those implicitly made by Amero's state habeas court (about the relative credibility of Amero and his state trial counsel) were entitled to a presumption of correctness. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *DeVille v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994).

Under the AEDPA, the burden in this federal habeas corpus proceeding is on Amero to show by clear and convincing evidence that he was not competent to plead guilty. *Austin v. Davis*, 876 F.3d 757, 784 (5th Cir. 2017). The duty to hold a hearing *sua sponte* on the issue of the defendant's competency to stand trial or enter a guilty plea exists only where the evidence raises a bona fide doubt as to the defendant's competence to stand trial. *Robinson v. Pate*, 383 U.S. at 385. Amero failed to allege any specific facts, much less furnish any evidence, to the state trial court or the state habeas court showing that a bona fide doubt existed as to his ability to consult with his trial counsel or understand the legal proceedings against him on October 28, 2016. Rory Schepisi did not testify during the punishment phase of Amero's trial or offer any statement to the state trial court suggesting Amero was not competent to enter his guilty plea in October 2016. Amero identifies no evidence in the record suggesting he ever did or said anything in the presence of the state trial court that might have alerted that court to the need for a hearing on Amero's competency to plead guilty.

Given Amero's sworn written assertions on October 28, 2016, as well as those of his trial counsel, the lack of any evidence showing a history of irrational behavior on Amero's part, and the absence of any other identifiable statements or behavior in open court by Amero on or before

October 28, 2016 raising an issue as to Amero's competence, neither the fact that Amero had been treated for a suicide attempt in June 2015 nor Amero's unsubstantiated assertion that he had been diagnosed with bipolar disorder in early 2016 raised a bona fide doubt as to Amero's competence to enter his guilty pleas. *See Mitchell*, 709 F.3d at 441 (holding there was no error in a trial court's failure to conduct a hearing on the defendant's competency, despite the defendant's history of irrational behavior and diagnosis of mental illness, where the defendant testified in a rambling manner that established his understanding of the nature of the proceedings against him); *Mata*, 210 F.3d at 329 n.2 (the presence or absence of a mental illness or brain disorder is not dispositive as to competence). In fact, there is no evidence before this Court establishing that the state trial court was ever made aware of Amero's assertion that he is bipolar prior to the filing of Amero's state habeas corpus application. While there was evidence showing Amero had been treated for both depression and alcohol and steroid abuse in June 2015 following a suicide attempt, as well as evidence showing Amero had been treated in early 2016 for anxiety and sinusitis, there clearly was no evidence before the state trial court at the time it accepted Amero's guilty plea and sentenced him showing that Amero had ever been diagnosed by a medical or mental health professional as bipolar.

### 5. Conclusion

The Texas Court of Criminal Appeals' rejection on the merits during the course of Amero's state habeas corpus proceeding of Amero's complaint that he was denied a *sua sponte* hearing on the issue of his competency to plead guilty was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Amero's trial and state habeas corpus proceedings. All relief

requested in this claim should be denied.

### B. Ineffective Assistance by Trial Counsel

#### 1. Overview of the Claims

In his federal habeas corpus petition, Amero argues that his state trial counsel rendered ineffective assistance in connection with Amero's guilty plea by (1) failing to investigate the case against Amero and challenge venue in Randall County; (2) failing to discuss with Amero and assert an insanity defense; and (3) advising Amero to plead guilty. (ECF 5).

#### 2. Clearly Established Federal Law

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of *trial* counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In so doing, a convicted defendant has the burden of proof and must overcome a strong presumption that the conduct of his trial counsel "falls within [a] wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. 4,

7 (2009) (quoting *Strickland*, 466 U.S. at 688-89). Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Wiggins*, 539 U.S. at 523; *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694.

In instances where the state courts failed to adjudicate either prong of the *Strickland* test (such as those complaints the state courts summarily dismissed under the Texas writ-abuse statute or which the petitioner failed to fairly present to the state courts), this Court's review of the un-adjudicated prong is de novo. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Rompilla v. Beard*, 545 U. S. 374, 390 (2005).

Under the AEDPA's deferential standard of review, claims of ineffective assistance adjudicated on the merits by a state court are entitled to a doubly deferential form of federal habeas review. The AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 571 U.S. 12, 19 (2013). Under § 2254(d)(1), "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Wheeler,* 136 S. Ct. 456, 460 (2015) (quoting *White v. Woodall,* 572 U.S. 415, 419-20 (2014)); *Harrington v. Richter,* 562 U. S.

86, 103 (2011).

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."

*Harrington*, 562 U. S. at 101 (citations omitted).

### 3. Failure to Challenge Venue

#### a. The Claim Restated

Amero argues that his trial counsel should have challenged venue in Randall County because Amero was arrested in Potter County and the trial testimony of prosecution witness Evan Gray suggested that Amero's assault on Gray occurred in Potter, as opposed to Randall, County.

#### b. State Court Disposition

Amero presented a similar ineffective assistance complaint in his second claim in his state habeas corpus application. In response, Amero's trial attorney, R. Walton Weaver, submitted an affidavit to the state habeas court in which he stated, in pertinent part, that (1) he was concerned about the issue of venue in connection with the second count of the indictment against Amero, *i.e.*, the charge of aggravated assault upon Evan Gray; (2) he reviewed the witness statements given by Evan Gray and Tammy Morgan; (3) he attempted to drive the route matching the rather non-

19

specific descriptions given in Gray's and Morgan's witness statements; (4) Weaver concluded

from his review of Gray's witness statements and his examination of the relevant route that Gray

was alleging the incident involving him took place at a location inside Randall County; (5) during

the punishment phase of Amero's trial, Gray testified that the incident in which Amero pointed his

shotgun at Gray took place near an IHOP restaurant that Weaver believed to be in Potter County

but which he also believed to be located within the 400 yard distance of the county line identified

in count two of Amero's indictment; (6) Weaver consulted with Amero and decided not to

challenge venue on the second count of the indictment (*i.e.*, the Gray count) because Amero did

not want to go to trial and risk receiving a sentence of up to twenty years and doing so would

conflict with the defense's strategy of pleading guilty and seeking deferred adjudication; and (7)

evidence showing Amero's assault upon Gray took place in Potter County became available only

at the punishment phase of trial after Amero had already pleaded guilty.[11] The Texas Court of

Criminal Appeals denied Amero's second claim for state habeas relief on the merits.

### c. AEDPA Review

When a defendant challenges the voluntariness of his guilty plea entered pursuant to the

advice of counsel he must establish both that (1) his counsel's advice fell outside the range of

competence demanded of an attorney in a criminal case and (2) but for his counsel's allegedly

erroneous advice, he would not have pleaded guilty but would have insisted on going to trial. *Hill

v. Lockhart*, 474 U.S. 52, 57 (1985); *Ward v. Dretke*, 420 F.3d 479, 487 (5th Cir. 2005).

This Court has undertaken de novo review of the evidence that was before the state habeas

court when it rejected this ineffective assistance claim on the merits. Attorney Weaver's affidavit,

which Amero does not genuinely contradict, states that Weaver retraced the route driven by Amero

---

[11] (ECF 12-7 at 3–4; ECF 13-26 at 129–30).

and his victims on the night of October 26, 2015 after reviewing the witness statements given to police by Gray and Morgan. Weaver concluded that the offense alleged in the second count of the indictment appeared to have taken place in Randall County. Weaver stated that, based on the desire of Amero to avoid trial and the possibility of a twenty-year sentence, the defense decided not to contest venue as to the Gray count. At no point in Amero's state habeas proceeding did Amero allege any specific facts or furnish any evidence showing that the offense alleged in the first count of his indictment, *i.e.*, the offense against Tammy Morgan, took place anywhere other than Randall County. Thus, Amero alleges no facts showing that it was possible to challenge the first count of the indictment against him on venue grounds. Furthermore, Amero alleges no facts showing there was any evidence available at the time he pleaded guilty that could have furnished a basis for challenging venue on the second count of the indictment against him. Under such circumstances, this Court independently concludes the decision by Amero's trial counsel not to challenge venue on the Gray count of the indictment, *i.e.*, the second count, did not cause attorney Weaver's performance to fall outside the broad range of objectively reasonable professional performance. In sum, this ineffective assistance complaint fails to satisfy the deficient performance prong of *Strickland*.

Furthermore, this Court concludes after de novo review that there is no reasonable probability that, but for attorney Weaver's decision not to challenge venue on count two of the indictment, Amero would have chosen to proceed to trial on count one of the indictment. Amero admitted in his affidavit submitted to the state habeas court that he had no memory of the events of the night in question. Thus, Amero was not available to offer any exculpatory testimony. Likewise, Amero did not offer the state habeas court an affidavit or sworn declaration from Rory Schepisi stating that she was available to testify in a manner favorable to the defense had she been

called to do so at Amero's trial. Amero has failed to allege any facts showing that any potentially viable defense existed to count one of the indictment against him.

Amero's assertion that he was "out of his head" on the night in question is belied by the facts that (1) he managed to operate his vehicle for several miles while in close pursuit of the vehicle driven by Tammy Morgan; (2) he managed to maintain control of his own vehicle and to avoid colliding with Morgan's vehicle, as well as Gray's vehicle, despite multiple attempts by Gray to steer his steer his vehicle into position between Morgan's SUV and Amero's white Mustang; and (3) none of the law enforcement officers involved in Amero's arrest on October 26, 2015 gave any testimony suggesting Amero appeared to be impaired, under the influence, intoxicated, or behaving in an irrational manner on the night in question. On the contrary, an Amarillo Police Officer testified without contradiction that, when stopped, Amero attempted to justify his behavior by stating that Morgan had tried to run his vehicle off the road "so I told her I would kill her." (ECF 13-6 at 24). More significantly, Amero was not charged with driving while under the influence on October 26, 2015, only with intentional felonies, *i.e.*, aggravated assault with a deadly weapon. Amero furnished the state habeas court, and furnishes this Court, with no affidavit or testimony from any medical or mental health professional suggesting Amero was insane or otherwise incapacitated mentally on the night of his October 26, 2015 offenses. Thus, Amero offered the state habeas court, and offers this Court, no specific factual allegations, much less any evidence, showing there is a reasonable probability that, but for his trial counsel's failure to challenge venue on count two of the indictment, Amero would have chosen to proceed to trial on count one. In sum, Amero has failed to satisfy the prejudice prong of *Strickland*.

### d. Conclusions

This Court independently concludes after de novo review that Amero's complaint about

his trial counsel's failure to challenge venue with regard to the second count of the indictment does not satisfy either prong of *Strickland.* The Texas Court of Criminal Appeals' rejection on the merits during the course of Amero's state habeas corpus proceeding of Amero's ineffective assistance complaint about his trial counsel's failure to challenge venue on count two of the indictment was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Amero's trial and state habeas corpus proceedings. All relief requested in this claim should be denied.

### 4. Failure to Assert Insanity Defense

#### a. The Claim Restated

Amero argues his trial counsel should have asserted an insanity defense based upon Amero's assertion that he was diagnosed with bipolar disorder and was taking medications for same at the time of his offenses.

#### b. State Court Disposition

As explained above, Amero asserted essentially the same claim as his third ground for state habeas corpus relief. In response, Amero's state trial counsel furnished the state habeas court with an affidavit in which he stated, in pertinent part, that (1) evidence could not be found supporting an insanity defense; (2) while there was evidence showing Amero had abused alcohol and steroids and suffered from mental health issues exacerbated by his drug and alcohol abuse, attorney Weaver investigated and determined that he could not carry the burden of proving an insanity defense.[12] Amero presented the state habeas court with no medical records and no affidavit from any medical or mental health professional establishing that Amero had ever been diagnosed as bipolar or

---

[12] (ECF 12-7 at 4; ECF 13–26 at 130).

determined to be legally insane on October 26, 2015. The Texas Court of Criminal Appeals rejected this claim on the merits.

### c. AEDPA Review

Under Texas law, insanity is an affirmative defense to a criminal prosecution. *Williams v. Stephens*, 761 F.3d 561, 569 (5th Cir. 2014). More specifically, section 8.01(a) of the Texas Penal Code provides: "It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." *Battaglia v. State*, 537 S.W.3d 57, 61 n.3 (Tex. Crim. App. 2017). Amero offered the state habeas court no evidence showing that, at the time of his capital offense, he met the Texas statutory definition of insanity.

As explained above, in his affidavit in his state habeas corpus proceeding, Amero stated that he informed his trial counsel, *i.e.*, attorney Weaver, that he could not remember any of the events on the night in question. Thus, by his own admission Amero was unavailable to testify about those events or to offer any evidence suggesting he might have fit the statutory definition of insanity set forth above on October 26, 2015.

Likewise, Amero did not furnish the state habeas court with an affidavit or sworn statement from Rory Schepisi or anyone else, including a medical or mental health professional, suggesting Amero met the statutory definition of insanity on the night of October 26, 2015. Amero's naked assertion that he was diagnosed with bipolar disorder in early 2016 does not even begin to satisfy the standard under Texas law set forth above for establishing his insanity as of October 26, 2015.

On October 28, 2016, the same date he pleaded guilty, Amero executed sworn declarations that he was sane at the time of his offense. As explained above, Amero's subsequent attempts in his state habeas and federal habeas affidavits to recant those declarations are of limited utility. *See*

*Summers*, 431 F.3d at 872 (recanting affidavits are viewed with extreme suspicion); *Spence*, 80 F.3d at 1003 (recanting affidavits and testimony are disfavored and recanting affidavits must be compared to the trial record to determine if they are worthy of belief). Amero's trial counsel made similar written declarations that he believed Amero was sane at the time of his offenses.

Amero also complains that his trial counsel failed to investigate the medications Amero had been prescribed to address his depression, anxiety, and other medical ailments. But Amero does not identify with any reasonable degree of specificity what those medications were; nor does he allege any facts showing the medications in question had any impact on either Amero's competency to enter his guilty plea in October 2016 or Amero's legal sanity in October 2015. Such conclusory assertions will not support a finding of ineffective assistance. *Woodfox v. Cain*, 609 F.3d 774, 809 n.17 (5th Cir. 2010); *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010).

Amero's counselor, Dr. Newton, testified at the punishment phase of Amero's trial that: (1) Amero had undergone improvement since November 2016; (2) Amero was filled with regret and remorse for his conduct; (3) Amero would benefit from continued therapy and treatment; (4) Amero was beginning to address the deeply engrained negative messages that had negatively impacted Amero throughout his life; (5) counseling to create new pathways in the brain was erratic in a prison setting; and (6) Amero was salvageable. (ECF 13-7 at 11–32). Raising an insanity defense could very well have undermined the efficacy of Dr. Newton's testimony, especially considering Dr. Newton's admission that he had not diagnosed Amero with bipolar disorder. (*Id.* at 29). Likewise, at no point did Dr. Newton testify that he believed Amero had been legally insane at the time of his October 2015 offenses. Under such circumstances, the state habeas court's implicit acceptance of the credibility of the assertions made by attorney Weaver, *i.e.*, that no evidence could be located establishing Amero's legal insanity as of October 26, 2015, was itself

eminently reasonable. *See Coble v. Quarterman*, 496 F.3d 430, 437 (5th Cir. 2007) (holding trial counsel was not ineffective for failing to present insanity defense at guilt-innocence phase of trial but, instead, waited until punishment phase of trial to present evidence of defendant's mental illness where no expert would support finding of insanity at the time of the offense); *Martinez v. Dretke*, 404 F.3d 878, 888 (5th Cir. 2005) (trial counsel was under no obligation to raise insanity defense he considered to be utterly without merit).

Furthermore, this Court independently concludes there were objectively reasonable reasons for Amero's trial counsel to refrain from raising an insanity defense. First, as explained above, Amero cites to no evidence showing any medical or mental health professional was willing to testify in 2016 or 2017 that Amero had been insane at the time of his October 2015 offenses. Second, asserting an insanity defense would necessarily have involved requesting a mental health evaluation of Amero by a defense mental health expert. This, in turn, would have required Amero to submit to an evaluation by a prosecution mental health expert. *See Williams*, 761 F.3d at 469 (explaining that defense counsel's notification of intention to pursue intellectual disability defense required the defendant to submit to evaluation by a court-appointed mental health expert who later testified against the defense at trial). It is well-established that when a criminal defendant seeks to introduce mental health evidence through a psychological expert, the prosecution is entitled to have its own expert examine and evaluate the defendant. *Kansas v. Cheever*, 571 U.S. 87, 94 (2013). It was reasonable for Amero's trial counsel to wish to avoid that possibility. Such an evaluation could have proven problematic for a number of reasons. The defense's mental health expert could have concluded Amero was neither bipolar nor insane.

As explained above, a diagnosis of bipolar disorder, like other findings of mental defect or illness, is not the equivalent of a diagnosis of legal insanity. Alternatively, a prosecution mental

health expert might have concluded Amero displayed antisocial or borderline personality disorder, a diagnosis that could foreseeably have damaged the defense's efforts to get Amero deferred adjudication. Given Amero's history of violence, and the nature of the arguments raised by Amero in his state and federal habeas proceedings, a diagnosis of antisocial personality disorder was a distinct possibility. Amero has a history of alcohol and substance abuse, consistently fails to accept responsibility for his criminal behavior, and attempts to blame his legal problems on others, including his victims. In sum, raising an insanity defense could very well have opened the door to a plethora of problems for Amero.

### d. Conclusions

This Court independently concludes after de novo review that Amero's complaints about his trial counsel's failure to advise Amero about the availability of an insanity defense and failure to raise such a defense do not satisfy either prong of *Strickland.* The Texas Court of Criminal Appeals' rejection on the merits of these same ineffective assistance complaints in the course of Amero's state habeas corpus proceeding was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Amero's trial and state habeas corpus proceedings. All relief requested in this claim should be denied.

### 5. Promise of "Shock Probation" & Advising Amero to Plead Guilty

### a. The Claim Restated

Amero also complains that his trial counsel failed to advise him of the availability of an insanity defense, induced Amero's guilty plea by promising Amero "shock probation," and erroneously advised Amero to plead guilty.

**b. State Court Disposition**

Amero asserted the same general complaints of ineffective assistance as his fourth claim for state habeas corpus relief. The Texas Court of Criminal Appeals denied this claim on the merits when it denied Amero's state habeas corpus application.

**c. AEDPA Review**

As explained above, in order to overcome the impact of his guilty plea, Amero must prove that (1) his counsel's advice fell outside the range of competence demanded of an attorney in a criminal case and (2) but for his counsel's allegedly erroneous advice, he would not have pleaded guilty but would have insisted on going to trial. *Hill*, 474 U.S. at 57; *Ward*, 420 F.3d at 487.

Also as explained above, Amero alleged no facts, and presented no evidence, to the state habeas court showing that there was any arguable evidentiary basis for asserting an insanity defense to the charges against him arising from the events of October 26, 2015. Amero admitted in his state habeas affidavit that he could not offer any testimony himself suggesting he met the legal definition of insanity because he did not remember the events of that evening. Amero furnished the state habeas court with no affidavits or sworn declarations from anyone else, including any medical or mental health professional, suggesting they could offer any testimony showing Amero was legally insane at the time of the events described by Tammy Morgan and Evan Gray in their punishment phase trial testimony and outlined in the indictment against Amero. Amero's counselor, Dr. Newton, did not testify Amero was insane at the time of is offenses, but Dr. Newton did testify he had not diagnosed Amero as bipolar.

Gray testified without contradiction that Amero pointed his shot gun at him and Gray was placed in fear of imminent bodily injury. Amero does not deny any of the foregoing.

In his sworn declarations made contemporaneously with his entry of his guilty plea, Amero

admitted he committed the acts outlined in both counts of the indictment and that he was sane at the time he did so. Amero also swore that he had been promised nothing by anyone to induce his guilty plea. Amero's trial counsel executed separate sworn statements establishing the same facts, *i.e.*, that Amero's guilty plea was voluntary, knowing, and not the product of any promises or inducements by anyone. Sworn declarations made in open court that accompany a guilty plea carry a strong presumption of verity. *United States v. Landreneau*, 967 F.3d 443, 450 (5th Cir. 2020); *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009).

Amero's recanting affidavit, in which he asserts that he only pleaded guilty because his trial counsel promised Amero would receive shock probation, is refuted by Amero's sworn declarations made in his plea documents and by the sworn declarations of Amero's own trial counsel. Thus, Amero's recanting affidavit must be viewed with extreme suspicion. *See Summers*, 431 F.3d at 872 (recanting affidavits are viewed with extreme suspicion); *Spence*, 80 F.3d at 1003 (recanting affidavits and testimony are disfavored and recanting affidavits must be compared to the trial record to determine if they are worthy of belief).

For the foregoing reasons, as well as those detailed above in Sections IV.C.3. and IV.D.3., this Court concludes after de novo review that Amero's final assertion of ineffective assistance fails to satisfy the prejudice prong of *Strickland*. There is simply no reasonable probability that, but for the action of attorney Weaver in allegedly promising Amero "shock probation," Amero would have insisted on proceeding forward to trial on the indictment against him and risked receiving a sentence of up to twenty years imprisonment.

### d. Conclusions

This Court independently concludes after de novo review that Amero's complaints about his trial counsel's alleged promise of "shock probation" and advise to plead guilty do not satisfy

either prong of *Strickland.* The Texas Court of Criminal Appeals' rejection on the merits of these same ineffective assistance complaints in the course of Amero's state habeas corpus proceeding was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Amero's trial and state habeas corpus proceedings. All relief requested in this claim should be denied.

## IV.    <u>REQUEST FOR EVIDENTIARY HEARING</u>

Amero requests an evidentiary hearing. (ECF 3 at 7). All of Amero's grounds for federal habeas corpus relief were disposed of on the merits during the course of his direct appeal or state habeas corpus proceedings. He is not entitled to a federal evidentiary hearing to develop new evidence attacking the state appellate or state habeas court's resolution of his claims. Under AEDPA, the proper place for development of the facts supporting a federal habeas claim is the state court. *See Harrington*, 562 U. S. at 103 ("Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding."); *Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding AEDPA clearly places the burden on a federal habeas petitioner to raise and litigate as fully as possible his federal claims in state court). Where a petitioner's claims have been rejected on the merits, further factual development in federal court is effectively precluded by virtue of the Supreme Court's holding in *Cullen v. Pinholster*, 563 U. S. 170, 181-82 (2011):

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record

in existence at that same time *i.e.,* the record before the state court.

Thus, Amero is not entitled to a federal evidentiary hearing on any of his claims that were rejected on the merits by the state courts, either on direct appeal or during his state habeas corpus proceedings. *See Halprin v. Davis*, 911 F.3d 247, 255 (5th Cir. 2018) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." (quoting *Cullen*, 563 U.S. at 185)), *cert. denied*, 140 S. Ct. 167 (2019). All of Amero's claims for federal habeas relief were rejected on the merit by the state habeas court and he is not entitled to an evidentiary hearing to develop new facts. *See Schriro v. Landrigan*, 550 U. S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

## V.     <u>CERTIFICATE OF APPEALABILITY</u>

Under AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under § 2254, the petitioner must obtain a Certificate of Appealability ("CoA"). *Miller-El v. Johnson*, 537 U.S. 322, 335-36 (2003); 28 U.S.C. § 2253(c)(2). Likewise, under AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted). In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which a CoA is granted. *Crutcher*, 301 F.3d at 658 n.10; 28 U.S.C. § 2253(c)(3).

31

A CoA will not be granted unless a petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Johnson*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). To make such a showing, the petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard*, 542 U.S. at 282; *Miller-El*, 537 U.S. at 336. This Court is required to issue or deny a CoA when it enters a final Order, such as this one, adverse to a federal habeas petitioner. *Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim. "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484). In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* whether this Court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable whether (1) the claim is a valid assertion of the denial of a constitutional right and (2) the district court's

procedural ruling was correct). This Court did not dispose of any of Amero's federal habeas corpus claims on procedural grounds, but instead this Court addressed the merits of all of Amero's claims.

The deferential standard of review applied to claims of ineffective assistance adjudicated on the merits in the state courts has particular bite in evaluating the appealability of ineffective assistance claims—the Supreme Court requires that federal courts "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt,* 571 U.S. at 15.

Reasonable minds could not disagree with this Court's conclusions that (1) all of Amero's complaints of ineffective assistance by his trial counsel fail to satisfy the prejudice prong of *Strickland*; (2) the TCCA reasonably rejected Amero's complaint that the state trial court failed to hold a competency hearing before accepting Amero's guilty plea; (3) there was no evidence before the state trial court suggesting a bona fide doubt existed as to Amero's competency to enter his guilty plea; (4) the state habeas court reasonably rejected on the merits all of Amero's grounds for state habeas relief; and (5) Amero is not entitled to an evidentiary hearing in this Court.

## VI.    RECOMMENDATION

For the foregoing reasons it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that:

(1) all relief requested in Amero's federal habeas corpus petition (ECF 3), as supplemented by his memorandum of law in support and traverse (ECF 5; ECF 14), be DENIED;

(2) Amero's request for an evidentiary hearing be DENIED**;** and

(3) Amero be DENIED a Certificate of Appealability with regard to all of his claims for relief.

## VII.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions

and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED August 24, 2021.

_____

LEE ANN RENO

UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).